IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ARKEEM H. NELLON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV592 |
| | ) | |
| LT. REGINA HAMPTON, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION, ORDER, AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This is a *pro se* civil rights action filed by Plaintiff Arkeem H. Nellon, an inmate in the North Carolina Department of Correction. He alleges that Defendant Lt. Regina Hampton, a correctional officer, violated his Eighth and Fourteenth Amendment rights while he was an inmate at Scotland Correctional Institution by confiscating his knee brace and refusing to replace it. Plaintiff contends that he was prescribed the knee brace due to his torn anterior cruciate ligament ("A.C.L."). Defendant Hampton has filed a Motion to Dismiss and for Judgment on the Pleadings [Doc. #31] ("Motion to Dismiss") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c), and 42 U.S.C. § 1997e(a) for failure to exhaust administrative remedies. Plaintiff Nellon has filed a Response [Doc. #36] to the Motion to Dismiss. The Court granted Defendant's Motion to Stay Discovery until after the Motion to Dismiss is ruled upon. For the reasons set out below, the Court recommends that Defendant's Motion to Dismiss be denied, and will order that the stay of discovery be lifted. The Court will also address two submissions that Plaintiff labeled as Motions [Doc. #50, #51].

I.  FACTS, CLAIMS, AND PROCEDURAL HISTORY

Plaintiff's Complaint[1] is filed pursuant to 42 U.S.C. § 1983.  Plaintiff alleges that on March 27, 2015, Defendant Hampton confiscated Plaintiff's knee brace and failed to provide a replacement or other option for his injured knee.  Plaintiff has attached to his Complaint documents showing that Plaintiff had an appointment with Pinehurst Surgical Clinic (Orthopedic) on March 9, 2015, and was prescribed a knee support hinge brace.  Notes of the visit indicate that Plaintiff complained of pain of 9/10, that he could not stand up without the support of a cane, that walking, standing and bending were painful, and that his knee locks and gives out on him. The knee brace was delivered from Pinehurst Surgical Clinic, accepted by Victoria Ramsey, NP, for the North Carolina Department of Public Safety, and issued to Plaintiff on March 12, 2015.  Plaintiff alleges that on March 27 at "main medical," Defendant Hampton "wanded" Plaintiff and the metal detector alerted on Plaintiff's knee.  Defendant asked Plaintiff about the alert, and according to the Complaint, "Plaintiff stated [it was] a knee brace hinge sleeve that the Pinehurst orthopedic prescribed Plaintiff for his torn A.C.L." (Complaint [Doc. #1] at 3.)  Plaintiff further alleges that there was a "4/8 long 1/16 thin cut" in the knee brace, that the brace had metal inside it to support his right knee, but "that you could not easily remove all was attached well."  (Id.)  Plaintiff further alleges that Dr. Casey at Pinehurst Surgical approved the knee brace and that Victoria Ramsey, apparently a nurse

---

[1] Defendant construes Plaintiff's supplementations [Doc. #13, #18] to the Complaint as amended complaints.  Plaintiff did not label these documents as amended complaints, and they appear to be further argument on his claims rather than an attempt to restate his claims. The Court therefore treats Plaintiff's original Complaint as the operative pleading in this case, and construes these filings [Doc. #13, #18] as Supplements to the Complaint.

2

practitioner at Scotland Correctional Institution, also approved the knee brace. He alleges that he had the knee brace for about 19 days before it was confiscated. Plaintiff also says that Defendant refused to replace the knee brace and that he was still deprived of his knee brace several months later. His alleges that his right knee is "in serious pain" because his knee is "loose." Plaintiff alleges that Defendant's actions in taking his knee brace and not replacing it violated his Eighth and Fourteenth Amendment rights by causing him extra physical pain. (Id.) Plaintiff asks for declaratory relief, injunctive relief, and damages.

To establish exhaustion of his administrative remedies, Plaintiff attached a copy of administrative grievance number 4860-15-0664 ("0664 grievance"), related to the events forming the basis for his claims, as well as a copy of the step two response to grievance 4860-15-0575 ("0575 grievance"), also involving the same facts as set out in Plaintiff's Complaint. The copy of the 0575 grievance shows that Plaintiff appealed the step one response to step two and that Plaintiff appealed this response to the Secretary of the Department of Public Safety.

Plaintiff filed the present action on July 8, 2015, in the Eastern District of North Carolina. The case was transferred to this Court, and after screening by this Court, Plaintiff was granted leave to proceed *in forma pauperis*. In a Supplement [Doc. #13] filed on August 10, 2015, Plaintiff adds that as a result of Defendant having deprived him of his knee brace, he twisted his knee on August 1, 2015, resulting in additional swelling. In a second Supplement filed on February 2, 2016, Plaintiff alleges that he has had an additional MRI showing further damage to his knee, now including a torn A.C.L. and a meniscus tear, which Plaintiff attributes to not having his knee brace. Plaintiff notes that he is now "on the list for surgery."

3

Defendant asserts various defenses in her Answer [Doc. #30], including failure to exhaust administrative remedies, failure to state a claim upon which relief can be granted, and qualified immunity. Defendant attached documents to her Answer, including copies of Plaintiff's grievances. Defendant also filed the present Motion to Dismiss, contending that the Complaint should be dismissed for failure to exhaust administrative remedies, failure to state a claim, and qualified immunity. Defendant also seeks dismissal of Plaintiff's claim for punitive damages.

II.     DISCUSSION

A.     Standard

The standard for granting judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as for granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002). A plaintiff fails to state a claim upon which relief may be granted under Rule 12(b)(6) when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In deciding a Rule 12(c) motion, the court assumes the facts alleged in the Complaint are true and draws all reasonable inferences in the non-moving party's favor. Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d 717, 723 (M.D.N.C. 2012). Unlike on a Rule 12(b)(6) motion however, the court may consider the Answer as well as the Complaint. Id. at 724. Documents attached to the Answer are part of the pleadings for Rule 12(c) purposes if the documents are central to the plaintiff's claims and the

4

authenticity is not challenged. Id. Importantly, however, Defendant cannot rely upon allegations of fact contained only in the Answer, including affirmative defenses, which contradict the allegations in the Complaint. Id. The Rule 12(c) motion should be granted only if, when taking all of the non-moving party's factual allegations as true, no genuine issues of material fact remain and the case can be determined as a matter of law. Id.

B.  Plaintiff's Failure to Exhaust Administrative Remedies

Defendant Hampton first argues that Plaintiff failed to exhaust his administrative remedies because he did not appeal the 0664 grievance. Defendant contends that Plaintiff's claims should be dismissed on this basis. However, the records attached to Plaintiff's Complaint show that Plaintiff exhausted his 0575 grievance, which was based on the same facts. Defendant apparently contends that only the 0664 grievance should be considered because Plaintiff cited only the 0664 grievance when asked in his Complaint about the steps taken to present his complaints in the grievance procedure. (Compl. [Doc. #1] at 1.) However, in the same section of the Complaint, Plaintiff states, "I have exhausted my administrative remedies relating to this complaint and have attached copies of grievances demonstrating completions." (Id.) The copies of the grievances attached to Plaintiff's Complaint confirm exhaustion of Plaintiff's claim under the 0575 grievance. Therefore, the Court finds no basis to dismiss Plaintiff's claims for failure to exhaust administrative remedies.

Moreover, the grievances attached to Defendant's Answer indicate that Plaintiff submitted the 0575 grievance on March 27, 2015, it was marked as "received" over a month later on May 1, 2015, it was accepted for screening another week later on May 7, and it was denied

5

at step one another twenty days later on May 27, 2015, reflecting a total of 60 days from submission to step one resolution. Plaintiff filed the step one appeal on May 27, 2015, which was denied June 12, 2015, and Plaintiff then appealed that step two determination, which was denied June 30, 2015. This case was filed shortly thereafter, on July 8, 2015. Thus, there does not appear to be any dispute that Plaintiff exhausted his administrative remedies as to the 0575 grievance. During the 60-day period while Plaintiff was waiting for the initial step one response to the 0575 grievance, Plaintiff filed a second grievance based on the same facts, and that second grievance was the 0664 grievance, which was marked as "received" on May 18, 2015 and "accepted" on May 20, 2015. However, the facility failed to take any action on that grievance until eight months later, on January 19, 2016, after the present suit was already filed. It is not clear why Plaintiff's second grievance was addressed eight months late, while this suit was pending. It appears that, at least until January 2016, the 0664 grievance had not been addressed separately at all, since both grievances were based on the same facts and the step one denial to the 0575 grievance was issued after both grievances had been accepted.[2] In any event, at this stage of the case, there is simply no basis to conclude that Plaintiff failed to exhaust his administrative remedies.[3]

---

[2] Indeed, according to the Administrative Policy attached to the Answer, Plaintiff would not have been allowed to submit a new grievance until the 0575 grievance had completed step two of the process. In response to Defendant's contentions regarding the 0664 grievance, it appears that Plaintiff contends that he elected not to pursue the 0664 grievance in January 2016, since he had already exhausted his administrative remedies and filed suit on that same claim.

[3] To the extent Defendant seeks dismissal of Plaintiff's supplemental contentions for failure to exhaust administrative remedies, the Court notes that Plaintiff does not allege any new incident as the basis for any additional claims. Instead, Plaintiff's Supplements simply note ongoing problems as a result of Defendant Hampton's original alleged conduct in confiscating his knee brace on March 27, 2015, and failing to provide a replacement.

6

C. Failure to State an Eighth Amendment Violation

Defendant next argues that Plaintiff fails to state a claim upon which relief may be granted. As set out above, Plaintiff has alleged that he has a torn A.C.L., and that Defendant Hampton took his knee brace which had been prescribed for him and which had been approved by the Department of Public Safety. Plaintiff alleges that he told Defendant Hampton that he had a torn A.C.L. and that the knee brace was prescribed by Pinehurst Orthopedic. Plaintiff alleges that Defendant refused to replace the knee brace and that as a result his right knee has had serious pain. At the time Plaintiff submitted his Complaint in July 2015 and Supplement in August 2015, he still did not have his knee brace.

To state a claim for deliberate indifference to his serious medical need in violation of the Eighth and Fourteenth Amendments, Plaintiff must show that Defendant was "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A "serious medical need" is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). Several courts have found that a torn A.C.L. is an objectively serious medical need. See Hall v. Pandya, No. 14-CV-12022, 2015 WL 9598834, at *3 (E.D. Mich. Dec. 3, 2015) ("The Court will accept, and Defendant concedes, for purposes of the instant motion that Plaintiff's torn ACL constitutes a serious medical need."); Jackson v. Pompan, No. C 12-6049 SI, 2014 WL 2085353, at *3 (N.D. Cal. May 19, 2014) ("The evidence in the record showing that Jackson had chronic knee pain that turned out to include an ACL tear suffices to permit a jury to find the existence of objectively serious

7

medical needs."); McNeill v. Wolfe, Civil Action No. WDQ-10-3116, 2011 WL 4102144, at *5 (D. Md. Sept. 7, 2011) ("The parties do not deny that a torn ACL causing pain is a serious medical condition sufficient to satisfy the objective element of the Eighth Amendment standard under *Estelle*."); Carter v. Naphcare, Inc., No. 1:08CV370, 2009 WL 2171247, at *3 (M.D.N.C. July 20, 2009) (finding that plaintiff's torn ACL and torn meniscus "arguably meets" the definition of a serious medical need). Thus, at this stage in the case, Plaintiff has alleged a serious medical need under Estelle.

The Court also finds that, at this stage of the proceedings, Plaintiff has alleged facts to support his claim that Defendant acted with deliberate indifference. A defendant is deliberately indifferent if she knows that an inmate faces an excessive risk to inmate health or safety and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference "is manifested . . . by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05 (footnotes omitted).

Taking Plaintiff's allegations as true, Defendant confiscated Plaintiff's prescribed knee brace and kept it for at least several months, knowing that Plaintiff had a torn A.C.L. Plaintiff told the Defendant the brace had been prescribed by Pinehurst Surgical Clinic and issued by the prison medical services. The brace may have had a narrow, half-inch long cut in it, but all of the metal parts were attached and not easily removed. Finally, Defendant refused to replace the knee brace with another one, and did not provide any other alternative options or medical care after his knee brace was confiscated. This evidence tends to show that Defendant interfered

8

with Plaintiff's prescribed medical treatment by taking Plaintiff's knee brace, knowing that it would cause him pain and a risk of further injury to his knee, and then refused to take reasonable steps to address the serious risk of pain or injury.

In arguing that Plaintiff has not stated an Eighth Amendment violation, Defendant fails to take into account all of Plaintiff's allegations. By way of example, Defendant argues that "[i]n the original Complaint, Plaintiff does not make any allegations that Defendant Hampton had knowledge of Plaintiff's medical condition as a correctional officer." (Mem. [Doc. #32] at 14.) However, Plaintiff alleges in his original Complaint that he told Defendant Hampton that the knee brace was prescribed by Pinehurst Orthopedic for his torn A.C.L. (Compl. at 3.) Defendant also chooses her version of events over Plaintiff's version at times. For instance, Defendant argues that she took the knee brace for security reasons, but Plaintiff contends that all of the metal parts were attached and could not be easily removed even though there was a very small cut to the fabric covering the brace. Thus, according to Plaintiff's version of the events, there was no basis for a security concern. Moreover, even if there were a security concern, Defendant does not address Plaintiff's allegation that she refused to provide any replacement knee brace and otherwise failed to provide other alternatives or medical care to the extent confiscation of the knee brace was necessary. See Young v. Harris, 509 F. Supp. 1111, 1113 (S.D.N.Y. 1981) (finding that the plaintiff had stated an Eighth Amendment claim for failure to provide him with a prescribed knee brace, based on failure to provide prescribed treatment or unreasonable delay in access to treatment); Cerundo v. Jackson, No. 85CIV7279, 1987 WL 4717 (S.D.N.Y. Jan. 8, 1987) (finding that plaintiff had stated a potential § 1983 claim

9

against correctional officers who failed to provide the plaintiff with a wheelchair and thus "deliberately disregarded a medical professional's instructions by forcing [plaintiff] to walk, rather than transporting him in a wheelchair"). Defendant relies in large part on her own version of events, including those set out in her responses to Plaintiff's grievances. However, Plaintiff disputes that account, and has attached the grievances to establish exhaustion of administrative remedies, but does not adopt, incorporate, or rely on Defendant's version of events. Ultimately, the Court on Motions for Summary Judgment can consider Defendant's evidence and whether Plaintiff is able to present sufficient evidence in support of his claims, but at this stage of the proceedings the Court may not make the type of credibility and other factual determinations for which Defendant argues. See Kopec v. Coughlin, 922 F.2d 152 (2d Cir. 1991) (reversing and remanding district court decision that had granted motion to dismiss on a claim of failure to provide leg prosthesis, where district court considered Defendant's evidence and exhibits and thus effectively converted the motion into one for summary judgment without notifying the plaintiff or following the procedure set out in Federal Rule of Civil Procedure 12(d)).[4]

Therefore, Defendant's Motion to Dismiss on this basis should be denied.

D.   Punitive Damages

Defendant argues that Plaintiff's request for punitive damages should be dismissed because he fails to sufficiently plead "evil intent" or "callous indifference." Punitive damages are available in § 1983 actions "for conduct that involves 'reckless or callous indifference to the federally protected rights of others,' as well as for conduct motivated by evil intent." Cooper

---

[4] This is particularly true here, where Plaintiff has asked for discovery, and the Court denied that request and stayed discovery at Defendant's request. (See Order [Doc. #49].)

10

Case 1:15-cv-00592-LCB-JEP   Document 55   Filed 10/31/16   Page 10 of 13

v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). "The callous indifference required for punitive damages is essentially the same as the deliberate indifference required for a finding of liability on the § 1983 claim . . . ." Cooper, 814 F.2d at 948. Because the Court finds that Plaintiff has sufficiently alleged deliberate indifference to his serious medical need, Plaintiff's allegations are also sufficient to state a claim for punitive damages. See Simmons v. Corizon Health, Inc., 122 F. Supp. 3d 255, 264 (M.D.N.C.) ("Insofar as the court has found Plaintiffs' allegations sufficient to allege deliberate indifference by Corizon, the court finds them sufficient to support a claim for punitive damages under § 1983."), on reconsideration in part on other grounds, 136 F. Supp. 3d 719 (M.D.N.C. 2015).

Thus, Defendant's request to dismiss Plaintiff's claim for punitive damages should be denied at this stage of the proceedings.

E.    Qualified Immunity from Monetary Damages

Finally, Defendant argues that Plaintiff's claim for monetary damages should be dismissed based upon Defendant's qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). However, it is clearly established that prison guards violate the Eighth Amendment based on deliberate indifference to a serious medical need, and deliberate indifference "is manifested . . . by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05. Here, Plaintiff

11

alleges that Defendant intentionally interfered with the prescribed treatment for his A.C.L., knowing that he had a torn A.C.L. and that the knee brace had been prescribed, and refused to provide a replacement brace or other alternative option or medical treatment. Defendant disputes Plaintiff's factual presentation, and makes arguments based on what the "record demonstrates," but those disputes cannot be resolved at this stage of the proceeding. Thus, resolution of the qualified immunity claim in this case is a question that turns to a large extent on resolution of factual disputes regarding the events at issue, and can be considered again on dispositive motions after a brief period of discovery.[5] At this stage of the proceedings, taking Plaintiff's allegations as true, the Court cannot find that Defendant is entitled to qualified immunity as a matter of law. Defendant's motion to dismiss Plaintiff's request for monetary damages should therefore be denied.

F.   Plaintiff's "Motions" [Doc. #50, #51]

Plaintiff submitted two documents which he labeled as "Motions" [Doc. #50, #51]. However, after reviewing those documents, the Court construes them as further argument in response to Defendant's Motion to Dismiss. The Court will therefore direct the Clerk to redesignate these documents as supplements to Plaintiff's Response to Defendant's Motion to Dismiss. In light of the determination set out above, the Court need not address them further.

---

[5] Likewise, to the extent Defendant contends that she is entitled to qualified immunity because she acted at the direction of superior officers, that contention raises facts beyond the allegations of the Complaint, and Plaintiff would be entitled to discovery regarding that contention to the extent Defendant contends someone else is responsible.

12

G.  Scheduling Order

In light of this Recommendation, the stay of discovery previously requested by Defendant will be lifted. Because the stay of discovery will be lifted, the Court will adopt a Scheduling Order in this case with a Standard discovery track, all discovery to be completed by February 28, 2017. No pretrial conference is needed.

III.  CONCLUSION

IT IS THEREFORE ORDERED that the previous STAY of DISCOVERY entered in this action is LIFTED, and the Court adopts a Standard discovery track, with all discovery to be completed by February 28, 2017.

IT IS FURTHER ORDERED that the Clerk is directed to redesignate Plaintiff's filings [Doc. #50, #51] as supplements to Plaintiff's Response [Doc. #36].

IT IS RECOMMENDED that Defendant's Motion to Dismiss and for Judgment on the Pleadings [Doc. #31] be denied, without prejudice to Defendant raising those contentions in a Motion for Summary Judgment after discovery.

This, the 31st day of October, 2016.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge