IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ARKEEM H. NELLON, )
)
    Plaintiff, )
)
v. ) Case No. 1:15CV592
)
LT. REGINA HAMPTON, )
)
    Defendant. )
)
)

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This prisoner civil rights action comes before the Court on a Motion for Summary Judgment [Doc. #70] by Defendant Regina Hampton ("Defendant"). Plaintiff Arkeem Nellon ("Plaintiff") is proceeding *pro se*. For the reasons set out below, Defendant's Motion for Summary Judgment should be granted, and this action should be dismissed with prejudice.

I.    FACTS, CLAIMS, AND PROCEDURAL HISTORY

On July 8, 2015, Arkeem H. Nellon, a prisoner of the State of North Carolina, commenced this action pursuant to 42 U.S.C. § 1983, alleging that Defendant, an officer at Scotland Correctional Institution, acted with deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment. Specifically, Plaintiff alleges that Defendant was deliberately indifferent to Plaintiff's serious medical needs when Defendant confiscated Plaintiff's medically prescribed metal hinge knee brace and "refused" to replace it for several months.

Plaintiff's medical records, submitted by both parties, show that Plaintiff injured his right knee playing basketball with other inmates in 2013, and received ongoing medical treatment for the injury during 2013 and 2014. On March 9, 2015, Plaintiff was seen by an outside medical provider, Pinehurst Surgical Clinic ("Pinehurst"), for complaints of chronic right knee pain and instability. (Compl. [Doc. #1-1 at 9]); (Def.'s Br. [Doc. #71-6 at 33].) Pinehurst's treatment records reflect "moderate degenerative changes of the patellofemoral compartment" and also note that an MRI from 2014 revealed a partial tear of Plaintiff's ACL. (Def.'s Br. [Doc. #71-6 at 33].) Plaintiff was not recommended for surgery at that time. Pinehurst instead prescribed to Plaintiff an over-the-counter knee brace with a hinged knee sleeve that was subsequently approved by North Carolina Department of Public Safety ("NCDPS") Nurse Practitioner Victoria Ramsey. (Def.'s Br. [Doc. #71-6 at 46]); (Compl. [Doc. #1 at 3].)

Plaintiff had the knee brace for approximately 2 weeks. On March 27, 2015, he was wearing the hinged knee brace and seated in a wheelchair following a physical therapy appointment. As part of a security check, Defendant waved a security wand over Plaintiff's right knee. The wand alerted, and Plaintiff states that he informed Defendant that the alert was caused by the "knee brace hinge sleeve that Pinehurst orthopedic prescribed Plaintiff for his torn A.C.L." (Compl. [Doc. #1 at 3].) According to Defendant's Affidavit, the knee brace appeared to have been "altered" because there was a cut in the brace and she could see the metal hinges which could be easily removed, making it contraband. (Def.'s Br. [Doc. #71-5 at 3, ¶18].) Defendant confiscated the knee brace and told Plaintiff that she would follow up with medical personnel and her supervisors regarding the state of his knee brace. (Def.'s Br.

2

[Doc. #71-5 at 3, ¶19].)  According to Defendant's Affidavit, she contacted medical personnel, but they could not confirm whether the knee brace was approved by prison physicians.  (Def.'s Br. [Doc. #71-5 at 4, ¶21].)  Defendant states that she next followed up with her supervisors, who took possession of the knee brace for security reasons.  (Def.'s Br. [Doc. #71-5 at 4, ¶25-27].)  According to Defendant's supervisor, William Bullard, altered medical devices are considered contraband and must be removed from an inmate's possession for safety and security reasons. (Def.'s Br. [Doc. #71-3 at 3, ¶18].)  Bullard cites to NCDPS procedures, which provide that "[c]ustodial officers are required to remove contraband from an inmate's possession for safety and security reasons [,and] [a]ny weapon, tool, or other item that can be used to effect an escape or aid in an assault will be considered contraband."  (Def.'s Br. [Doc. #71-3 at 37].)  Bullard further notes that prison medical services had stopped issuing metal medical devices and used hard plastic instead because some inmates had used metal devices as weapons.  (Def.'s Br. [Doc. #71-3 at 3].)  Defendant also notes that Plaintiff had a history including over 50 disciplinary infractions, was in restricted housing at the time of this incident, and Defendant was aware of Plaintiff's most recent disciplinary infraction a few weeks earlier for threatening staff members.  (Def.'s Br. [Doc. #71-3 at 2, 13].)  Defendant informed Plaintiff that prison management retained the knee brace for "security reasons because it had been altered from its original state."  (Def.'s Br. [Doc. #71-5 at 4, ¶28].)  Defendant asserts that she thereafter had no involvement with Plaintiff's knee brace, the disposition of which was to be determined by the "Correctional Administrator and medical."  (Def.'s Br. [Doc. #71-5 at 4, ¶30].)

Plaintiff concedes that there was a small cut in the knee brace sleeve, but maintains that the metal was well attached and not easily removed. (Compl. [Doc. #1 at 3].) Plaintiff further contends that Defendant "refused" to replace the hinge sleeve knee brace with a new one or with an alternative option and thus prolonged the period of time Plaintiff was without his brace, causing "extra physical pain." (Pl.'s Br. [Doc. #1 at 1, 3].) However, the medical records submitted by both parties reflect that prison officials attempted to address the status of Plaintiff's knee brace with him in April 2015. Plaintiff's medical records reflect that Plaintiff had a follow-up appointment at Pinehurst on April 20, 2015. That appointment record reflects that Plaintiff was "unable to utilize the hinged knee sleeve because of the metal contents of the brace," and Plaintiff was instead recommended strengthening exercises, a "knee sleeve," and follow-up. (Def. Br. [Doc. #71-6 at 35].) Plaintiff was directed to "Follow-up at Sick Call as Needed." ((Def.'s Br. [Doc. #71-6 at 50].) Plaintiff was referred for physical therapy the next day, but Plaintiff refused an appointment offered by Nurse Ramsey on April 22, 2015 and again on April 30, 2015. (Def.'s Br. [Doc. #71-6 at 52-53].) Plaintiff's medical records reflect that Plaintiff did not request a sick call appointment until May 25, 2016, and he was seen by medical personnel the next day, on May 26, 2015, and was issued a neoprene knee brace. (Def.'s Br. [Doc. #71-6 at 56, 110, 112]; Pl.' Resp. to Def.'s Mot. for Summ. J. [Doc. #74 at 1].) In addition, the medical records reflect that Plaintiff was issued a cane, and Plaintiff also had twelve physical therapy appointments in June 2015. (Def.'s Br. [Doc. #71-6 at 44, 114]; Pl's Mot. [Doc. #59].) Plaintiff does not dispute this sequence of events, but complains that the neoprene brace did not "have any metal or plastic hinge." (Pl.' Resp. to Def.'s Mot. for Summ. J. [Doc. #74 at 1].)

4

Plaintiff contends that he suffered further injury on August 1, 2015 when he twisted his knee, which he says resulted in swelling and increased pain. (Supp. to Compl. [Doc. #13 at 3]). Medical records reflect that Plaintiff was "playing around" with other inmates in a cell and injured his knee. (Def.'s Br. [Doc. #71-6 at 57].) Plaintiff does not dispute that he had a neoprene knee brace at the time of the August 1, 2015 injury. Despite the issuance of the neoprene brace and cane, however, Plaintiff attributes the injury to Defendant's confiscation of his mental hinge knee brace. (Pl.'s Response [Doc. #74 at 20].) Plaintiff blames the injury on not having "[any] kind of knee support," and states that he "lost balance (and) his medical condiction (sic) worsen(ed)," and that "[h]is meniscus (was) torn." (Pl.'s Supp. [Doc. #39 at 1].) Plaintiff's medical records from August 10, 2015 indicate that Plaintiff likely had "ACL, PLC and med meniscus tears based on exam." (Def.'s Br. [Doc. #71-6 at 63].) On August 31, 2015, the order for a neoprene knee brace was discontinued and Plaintiff was instead ordered a "knee brace neo hinged." (Def.'s Br. [Doc. #71-6 at 65].) Plaintiff underwent surgery to repair his right knee on January 25, 2016. (Pl.'s Decl. [Doc. #39 at 1]; Pl.'s Br. [Doc. #71-5 at 15].)

Defendant previously filed a Motion to Dismiss and for Judgment on the Pleadings pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c), and 42 U.S.C. § 1997e(a) for failure to exhaust administrative remedies. The Court denied Defendant's Motion and permitted the parties a period of discovery. Plaintiff prematurely filed a Motion for Summary Judgment on January 17, 2017 [Doc. #59], and Defendant subsequently filed a Motion for Summary Judgment on March 29, 2017 [Doc. #70]. In her Motion for Summary Judgment, Defendant contends that she was not deliberately indifferent to Plaintiff's medical needs, and

5

that she took appropriate action pursuant to prison policy and procedure in the interests of the safety and security of staff and other inmates. Alternatively, Defendant contends she is entitled to qualified immunity. Plaintiff thereafter timely filed what this Court construes as Responses [#73, #74], and Defendant thereafter timely filed a Reply [Doc. #76]. Because Plaintiff's premature Motion for Summary Judgment attaches documents including medical records, the Court will consider Plaintiff's Motion as part of his response to Defendant's Motion for Summary Judgment, so that all of Plaintiff's submissions are considered.[1]

II.  ANALYSIS

   A.   Standard

Summary judgment is appropriate when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs,

---

[1] The Court notes that Defendant has attached sworn affidavits and supporting documentation to her Motion. Plaintiff has attached various medical records to his filings, most of which appear to be duplicative of those Defendant filed. In addition, although Plaintiff has not submitted any formal affidavits, Plaintiff submitted some of his filings "under the penalty of perjury" which were likely intended to be considered as sworn evidence. Thus, the Court will consider Plaintiff's Complaint [Doc. #1], his Second Supplement to his Complaint [Doc. #18], and two Declarations [Doc. #5, #39] to be the equivalent of opposing affidavits for summary judgment purposes, and the Court will also consider the documents submitted by Plaintiff with his Motion for Summary Judgment and with his various response briefs. See 28 U.S.C. § 1746; Duff v. Potter, 665 F. App'x. 242, 243 (4th Cir. 2016) (citing World Fuel Svcs. Trading, DMCC v. Hebei Prince Shipping Co., Ltd., 783 F.3d 507, 516 (4th Cir. 2015)).

6

945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48). A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. See, e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 248 (noting that a non-moving party may not rest upon mere allegations or denials.)

B. Deliberate Indifference

In her Motion for Summary Judgment, Defendant contends that Plaintiff has failed to present evidence that her conduct constituted deliberate indifference to Plaintiff's medical needs in violation of the Eighth Amendment. Under the Eighth Amendment, prison officials must provide humane conditions of confinement, which includes a duty to provide inmates with adequate medical care. Farmer v. Brennan, 511 U.S. 825, 832 (citing Hudson v. Palmer, 468 U.S. 517, 526-527 (1984)). Thus, a prison official's deliberate indifference to an inmate's serious medical needs may constitute a violation of an inmate's constitutional rights.

In order to sustain an Eighth Amendment claim based on inadequate medical care, Plaintiff must satisfy a two prong test. Farmer v. Brennan, 511 U.S. 825 (1994). The first prong is objective and requires a showing of a sufficiently serious medical need. Id. at 834; Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A serious medical need is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted). Second, Plaintiff must also show that,

7

subjectively, Defendant acted with "deliberate indifference" to his serious medical needs. Farmer, 511 U.S. at 834. Deliberate indifference is more than mere negligence and requires that a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 835-837. Deliberate indifference may manifest when non-medical prison personnel, such as prison guards, "intentionally deny[] or delay[] access to medical care or intentionally interfer[e] with the treatment once prescribed." Estelle, 429 U.S. at 104-05.

Here, to the extent Plaintiff's claim is based on a delay in treatment, Plaintiff has not presented evidence to show that any delay can be attributed to Defendant. The uncontested evidence reflects that Defendant deferred to her supervisors and medical personnel regarding the disposition of Plaintiff's metal hinge brace and the subsequent treatment options. Moreover, much of the delay Plaintiff complains of is attributable to Plaintiff's own refusal to accept medical care. The record indicates that medical personnel continued treatment for Plaintiff's knee as early as April 20, 2015. On that date, Pinehurst followed up with Plaintiff and recommended a knee sleeve, noting that the prison would not permit Plaintiff to have the metal hinge brace. (Def.'s Br. [Doc. #71-5 at 50].) NCDPS Nurse Practitioner Ramsey further followed up with Plaintiff on April 22, 2015 and April 30, 2015. Nurse Ramsey indicated in a treatment record that Plaintiff refused an appointment and that she instead spoke with him "through his cell door about his brace." (Def.'s Br. [Doc. #71-6 at 53.]) Although the context of that conversation does not appear from the record, the record reflects that Plaintiff was instructed to follow up as needed by making a sick call appointment. Plaintiff, however, did not request a sick call appointment until May 25, 2015. Plaintiff was seen by medical the next day and was issued a neoprene knee brace. Plaintiff does not dispute that he had an active

8

prescription for the neoprene knee brace at the time of his August 2015 injury. Therefore, any delay between April 20, 2015 and May 25, 2015 is attributable to Plaintiff's own refusal to accept medical care and/or request care by making an earlier sick call appointment. Similarly, any contention by Plaintiff that increased pain or swelling prior to the provision of the neoprene knee brace was "sufficiently severe" to implicate the Eight Amendment is belied by his failure to request medical care and his refusal to accept physical therapy appointments once offered.

Moreover, Plaintiff's assertions that the neoprene brace was inadequate to prevent the August 2015 injury would sound in negligence, which would at most give rise to a state law claim, but would fall short of implicating Plaintiff's constitutional rights. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged."); Thomas v Anderson City Jail, 2011 WL 442053 at *3 (D.S.C. Jan. 19, 2011) ("[T]he Constitution does require…a certain minimum level of medical treatment, [but] it does not guarantee to a prisoner the treatment of his choice." (quoting Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988)). As set out above, Plaintiff does not dispute that he was provided with a cane, a non-hinged knee brace, multiple medical appointments, including with specialists outside the facility, and at least 12 physical therapy appointment in the 90 days after the hinged brace was taken. This treatment was consistent with the prescribed course of treatment by Pinehurst on April 20, 2017, and in the circumstances Plaintiff has not shown deliberate

9

indifference to his serious medical needs after the initial confiscation of the hinged brace on March 27, 2017.[2]

Thus, the only remaining issue in this case is whether Plaintiff can sustain a claim against Defendant based on her initial confiscation of his knee brace. Ultimately, the undisputed evidence reflects that even if Plaintiff's need for the brace was readily apparent, Defendant confiscated the brace in furtherance of legitimate penological objectives. Indeed, a number of courts have upheld prison policies and officials' decisions to confiscate metal knee braces due to security concerns because such policies are generally seen as furthering legitimate penological goals. Tannenbaum v. Arizona, 2008 WL 2789589, at *9 (D. Ariz., July 17, 2008) (collecting cases). In the instant case, the evidence in the record reflects that Defendant acted in furtherance of prison policy when she confiscated Plaintiff's knee brace. While the parties dispute whether the metal inside the brace could be easily removed, Plaintiff does not dispute that the brace had a cut that allowed access to the metal hinge, and that prison officials viewed metal medical devices as safety concerns because inmates had used such devices as weapons. Nor does Plaintiff dispute that the prison had a policy that "[a]ny weapon, tool, or other item that c[ould] be used to effect an escape or aid in an assault w[ould] be considered contraband" and subject to confiscation (Def.'s Br. [Doc. #71-3 at 37].) Plaintiff also does not dispute his history of disciplinary infractions or his status in restricted housing. Further, Plaintiff does not contend that Defendant confiscated the knee brace for any reason

---

[2] The Court also notes that, to the extent Plaintiff claims that the type of medical treatment he received was inadequate, that claim would not implicate the Defendant, as decisions regarding Plaintiff's ultimate care were made by medical personnel, and Plaintiff has not presented any evidence of any ongoing involvement by Defendant.

10

other than for prison policies. Moreover, Defendant's immediate efforts to follow up with medical services and her supervisors after confiscating Plaintiff's knee brace are consistent with conduct motivated by penological goals. Neither Defendant's conduct, nor the prison's policies regarding medical devices or contraband constituted "punishment" in violation of the Eighth Amendment.

In addition, Plaintiff has not presented any evidence to establish that Defendant "recognized [her] actions were insufficient to mitigate the risk of harm." Iko, 535 F.3d at 241. Plaintiff does not allege nor does the record support an inference that Defendant believed consulting her superiors and medical personnel was insufficient to mitigate any risk of harm to Plaintiff. And, to the extent that Defendant was mistaken about the prudence of the action she took, and should have instead made further inquiries, such a claim would at most give rise to a state law negligence claim. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Whitley v. Albers, 475 U.S. 312, 319 (1986).[3]

---

[3] In the Motion for Summary Judgment, Defendant also contends that Plaintiff's claims regarding his August 2015 injury are barred by the Prison Litigation Reform Act ("PLRA") because he failed to fully exhaust his administrative remedies. However, this Court previously concluded that Plaintiff had exhausted his administrative remedies regarding the March 27, 2015 incident, and the Court further noted that with respect to the August 2015 injury:

> Plaintiff does not allege any new incident as the basis for any additional claims. Instead, Plaintiff's Supplements simply note ongoing problems as a result of Defendant Hampton's original alleged conduct in confiscating his knee brace on March 27, 2015, and failing to provide a replacement.

Nellon v. Hampton, 2016 WL 6426382, at n.3 (M.D.N.C. Oct. 31, 2016); cf. McAlphin v. Toney, 375 F.3d 753, 755 (8th Cir. 2004) (holding that inmate's grievance stated one denial-of-treatment claim, such that certain

11

D.     Qualified Immunity

Finally, the Court alternatively finds that Defendant would be entitled to qualified immunity. Qualified immunity shields government officials from liability for their conduct, provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The inquiry requires the Court to determine both whether Defendant's conduct violated the inmate's constitutional rights and whether the right was clearly established at the time of the alleged violation. "The law is clearly established such that a [prison official's] conduct transgresses a bright line when the law has been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the State." Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998) (internal quotation omitted). It is not necessary that there be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Aschcroft v. al-Kidd, 563 U.S. 731, 741 (2011). The contours of the right in question are sufficiently clear where "every reasonable official would have understood that what [she] is doing violates that right." Id. at 741 (internal quotations omitted). "Officials are not liable for bad guesses in gray areas." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992).

In light of this standard, the Court finds that Defendant is entitled to qualified immunity. As discussed above, the Court has concluded that there are no material factual

---

allegations of conduct closely related to that incident did not require separate administrative exhaustion). In any event, given the Court's conclusion that Defendant's Motion for Summary Judgment should be granted on other grounds, the Court need not further address the issue of exhaustion of administrative remedies.

disputes and the Defendant's conduct did not amount to a violation of Plaintiff's Eighth Amendment rights. Moreover, even absent that finding, Defendant would be entitled to qualified immunity because the right was not clearly established at the time of the alleged violation. In the instant case, Defendant's conduct was not clearly proscribed, such that she would have understood that her conduct violated Plaintiff's Eighth Amendment rights. As discussed at length above, Defendant acted in furtherance of what appeared to be legitimate penological goals designed to ensure the safety and security of the prison. Defendant, having no inherent authority over Plaintiff's medical treatment, reached out to prison medical services to determine whether Plaintiff was authorized to have the metal hinge knee brace. When medical services could not advise Defendant, she then followed up with her supervisors regarding the permissibility of Plaintiff's knee brace. The decision to retain the knee brace was that of Defendant's supervisors, not her own. As previously noted, Defendant had no reason to believe that medical services and/or her supervisors would not follow up appropriately with Plaintiff or that Plaintiff would fail to request additional medical care. In the circumstances, Defendant could not have known that her conduct transgressed any bright line prohibitions. Instead, at most, Defendant was acting in a gray area that neither the Supreme Court nor the Fourth Circuit has directly addressed.

For the reasons discussed herein, Plaintiff has failed to come forward with sufficient evidence to support an Eighth Amendment claim. Even had Plaintiff had presented sufficient evidence to establish an Eighth Amendment claim, Plaintiff's claim would still fall short because Defendant is entitled to qualified immunity. Therefore, Defendant's Motion for Summary Judgment should be granted. As noted above, Plaintiff's earlier Motion for

13

Summary Judgment has been considered as a premature response brief, but to the extent Plaintiff separately requested summary judgment in his favor, that Motion should be denied.

III. CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendant's Motion for Summary Judgment [Doc. #70] be GRANTED, that Plaintiff's Motion for Summary Judgment [Doc. #59] be DENIED, and that this case be dismissed with prejudice.

This, the 11th day of January, 2018.

/s/ Joi Elizabeth Peake
United States Magistrate Judge